UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL COOLIDGE and TINA COOLIDGE, | Civil Action No. 18-cv-12686 |
| Plaintiffs | Honorable Joseph H. Rodriguez |
| v. | **Opinion** |
| AMERICAN COMMERCE INSURANCE COMPANY, | |
| Defendant | |

Before the Court is Defendant American Commerce Insurance Company's ("Defendant") motion to compel enforcement of a settlement agreement against Plaintiffs Michael and Tina Coolidge ("Plaintiffs"). For the reasons stated below, I grant Defendant's motion.

**I.   Factual Overview**

This case arises out of a homeowner's insurance policy dispute ("the Policy") between Defendant American Commerce Insurance Company (the insurer) and Plaintiffs (the insured). On March 17, 2017, Plaintiffs filed a claim under the Policy to recover for damage to their home's roof, siding, and pool cover following a March 15, 2017 windstorm. [Compl., Dkt. 1 at ¶ 3; Dkt. 16, Exh. A at 1]. In April 2017, Plaintiffs filed a second claim under the Policy after Plaintiffs' heater "puffed back" and coated the interior walls of their house with an oily soot. [Compl., Dkt 1 at ¶ 9; Dkt. 16, Exh. A at 3–4]. Defendant sent an adjuster to evaluate the damage, compensated Plaintiffs for the cost to repair damaged siding, and paid $14,391.91 for the puff-back claim. [Dkt. 16, Exh. A at 3–4]. Defendant claimed that the Policy did not require further payment. Plaintiffs filed this breach of contract lawsuit as a result alleging that the Policy entitled them to additional compensation.

1

This matter was then referred to William J. Martin for arbitration. [Dkt. 12]. On August 22, 2019, Martin determined that Defendant had already compensated Plaintiffs for the siding damage, but awarded $300 for roof damage and $55,096.59 for the "puff-back" claim. [Dkt. 16, Exh. A]. Martin reduced the award by the $14,391.91 which Defendant already paid to Plaintiffs, and $500 for the deductible which the Policy required Plaintiffs to pay. [Dkt. 16, Exh. A]. Martin ultimately awarded $40,504.68. [Dkt. 16, Exh. A]. On September 19, 2019 filed a Notice of Demand for Trial De Novo. [Dkt. 15].

Documentary evidence suggests that the parties then engaged in settlement negotiations which culminated in Defendant's counsel drafting a written settlement agreement ("the Draft Settlement Agreement"). According to the Draft Settlement Agreement, Plaintiffs would release Defendants from all claims in exchange for $30,000.00. [Dkt. 16, Exh. C]. Defendant's counsel sent the Draft Settlement Agreement to Plaintiffs' counsel on February 5, 2020 stating "Please see the attached release. If all is in order, please have your clients execute. Let me know about the 'payee line' and please forward your w-9." [Dkt. 16, Exh. C]. Later that day, Plaintiffs' counsel responded by email "Thanks. Payees are clients and me or my firm s. Gallant law, p.c. We will get the release signed and sent back to you." [Dkt. 16, Exh. D]. On February 16, 2020, Plaintiffs' counsel sent an email to Defendant's counsel stating the following:

> Tim, I am really sorry to do this but this is 100 percent my mistake in a major miscommunication with my clients. I was under the impression that my clients wanted to settle, I was wrong, they don't, not for $30,000. I understand that you might want to file a Motion to compel settlement but there really is no detriment to you at this point so I am not sure how successful you would be. My client, Tina Coolidge is cc'd on this email so that she knows what is going on. Sorry for the confusion and miscommunication.

[Dkt. 16-2, Exh. E].

On June 17, 2020, Defendant filed the motion at issue here to bind Plaintiffs to the terms of the Draft Settlement Agreement. [Dkt. 16]. Plaintiffs did not respond to this motion, and this Court issued an Order to Show Cause as to why the Court should not treat the motion as unopposed. [Dkt. 17]. The parties participated in the show cause hearing on March 9, 2021 [Dkt. 21], where Plaintiffs confirmed on the record that Plaintiffs agreed to settle the case for $30,000 during settlement negotiations with Defendant.

## II. Legal Overview

In the Third Circuit, "[t]he validity and enforceability of settlement agreements is governed by state contract law." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012) (*citing Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009)). As in this case, a court sitting in diversity jurisdiction applies the law of the forum state. *Stadium Chrysler Jeep, L.L.C. v. DaimlerChrysler Motors Co., LLC*, 324 F. Supp. 2d 587, 595 (D.N.J. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "New Jersey has a strong public policy in favor of settlements." *Hosfeld v. Postal Transp., Inc.*, No. CV 15-7497, 2017 WL 5175594, at *2 (D.N.J. Nov. 7, 2017) (Rodriguez, J.) (citations omitted). Under this policy, courts "strain to give effect to the terms of a settlement wherever possible." *Id.* (quoting *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 503 A.2d 331, 333 (N.J. Super. Ct. App. Div. 1985).

"New Jersey law permits oral agreement on essential terms, 'even though [the parties] contemplate the later execution of a formal document to memorialize their undertaking.'" *Hosfeld*, 2017 WL 5175594, at *2 (quoting *United States v. Lightman*, 988 F. Supp. 448, 459 (D.N.J. 1997)). A court may enforce a settlement agreement where parties have agreed on an essential term even if "a writing does not materialize because a party later reneges." *Lahue v. Pio Costa*, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993*). See Hosfeld*, 2017 WL

3

5175594, at *1, *3.  However, a "settlement stipulation should not be enforced where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." *Id.* (citations and quotations omitted).  "[Q]uestions of material fact regarding contract formation preclude an order enforcing settlement." *LNT Merch. Co. v. Dyson, Inc.*, No. CIV A 08-2883 (SRC), 2009 WL 2169236, at *3 (D.N.J. July 21, 2009).

Ultimately, the moving party bears the burden "to establish that the parties entered into a contract of settlement." *LNT Merch. Co. v. Dyson, Inc.*, No. CIV A 08-2883 (SRC), 2009 WL 2169236, at *2 (D.N.J. July 21, 2009) (citing *Amatuzzo v. Kozmiuk*, 305 N.J. 469, 475 (N.J. Super. Ct. App. Div. 1997); and *United States v. Lightman*, 988 F. Supp. 448, 458 (D.N.J. 1997)).

## III. Analysis

The Court finds that Plaintiffs are bound to the terms outlined in the Draft Settlement Agreement.  Defendant argues, and Plaintiffs confirmed for the record, that the parties mutually intended  and agreed to settle all claims for $30,000 and therefore agreed to the "essential elements" of the settlement.  *Lahue*, 623 A.2d at 788.  Courts in this district have enforced settlement agreements where, as here, clear evidence shows that the parties agreed to such essential settlement terms, even though the parties did not execute a contract.  *See, e.g.*, *Hosfeld v. Postal Transp., Inc.*, No. CV 15-7497, 2017 WL 5175594, at *1 (D.N.J. Nov. 7, 2017) (Rodriguez, J.) ("Defendants' Counsel: Finkle will pay $5,000 for a release from all claims brought, or which could have been brought, to date, including counsel fees and costs. If that's (sic) agreed I'll have Vik Jaitly prepare a Settlement Agreement and Release. Please Confirm. John; Plaintiff's Counsel: Yes agreed."); *Thorner v. Sony Computer Entertainment America LLC*,

4

No. CIV.A. 09-1894 MLC, 2013 WL 1145200 (D.N.J. Mar. 18, 2013); *United States v. Lightman*, 988 F. Supp. 448, 458–59 (D.N.J. 1997) (finding that a party manifested intent to be bound by the essential terms of a settlement agreement where that party's counsel initially presented these essential terms during settlement negotiations, and exchanged drafts of a formal settlement agreement without changing any of these essential terms).  In light of the record evidence, Plaintiffs' admission, and New Jersey's strong public policy favoring settlements, *see Hosfeld*, 2017 WL 5175594, at *2, the Court finds that Plaintiffs assented to the terms of the Draft Settlement Agreement, and agreed to release their claims against Defendant in exchange for $30,000.  There are no issues of material fact that require the Court to find otherwise.

    The Court will therefore GRANT Defendant's motion to compel enforcement of the Draft Settlement Agreement.  An appropriate order will follow.


March 24, 2021                                                                                        /s/ Joseph H. Rodriguez

                                                                                          Hon. Joseph H. Rodriguez, USDJ